SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 7601406/07
Date purchased: 04/27/07

------------------------------------------------------------x

HARRY TRES MEYER,

                                                      Plaintiff

-against-

CARDEAN LEARNING GROUP LLC

                                           Defendant

New York County
The basis of venue is that
the transaction occurred
in New York County

**SUMMONS**

------------------------------------------------------------x

To the above-named Defendant:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: Bedford, New York
       April 26, 2007

                             LAW OFFICE OF NISHANI NAIDOO LLC

                             By: NISHANI D. NAIDOO, Esq.
                             Attorneys for Plaintiffs
                             P.O. Box 282
                             Bedford, New York 10506
                             (917) 591-9828

Defendant's Address:
Cardean Learning Group
225 High Ridge Road
East Building, 1st Floor
Stamford, CT 06905

NEW YORK
COUNTY CLERK'S OFFICE

APR 27 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x    Index No. 76 01406/07

HARRY TRES MEYER,

                                    Plaintiff

            -against-

CARDEAN LEARNING GROUP LLC

                                 Defendants.

-------------------------------------------------------------x

**VERIFIED
COMPLAINT**

    Plaintiff HARRY TRES MEYER, by his attorney, the LAW OFFICE OF NISHANI NAIDOO LLC, respectfully alleges as follows:

    1. At all times hereinafter mentioned, Plaintiff HARRY TRES MEYER (hereinafter "MEYER") is a resident of New York County.

    2. At all times hereinafter mentioned, upon information and belief, Defendant CARDEAN LEARNING GROUP LLC (hereinafter, "CARDEAN") was and is a limited liability company formed under the laws of the State of Delaware and has a principle place of business in the City of Stamford located in the State of Connecticut.

## BACKGROUND

    3. Sometime in early November 2005, CARDEAN through its then President Cathleen Raffaeli contacted Plaintiff regarding employment at CARDEAN as Chief Marketing Officer.

    4. Plaintiff met with Ms. Raffaelli and communicated to her that he was working as an independent marketing consultant on other projects and was, in addition, considering permanent job offers from at least two other clients.

    5. Ms. Raffaelli outlined to Plaintiff that CARDEAN'S Board of Directors (the "Board") was seeking to aggressively grow CARDEAN through marketing and was not looking for just a Chief Marketing Officer but a "key commercial visionary". See Exhibit A.

    6. Ms. Rafaelli communicated to Plaintiff that CARDEAN would be willing to work around his schedule by allowing him to finish his other consulting projects until he was able to work full-time

at CARDEAN.  Ms. Rafaelli also communicated to Plaintiff that the Board wanted to meet with Plaintiff almost immediately since he was an excellent fit.  See Exhibit A.

7.  Plaintiff was interested in working in an environment with such dynamic potential where he would have the opportunity to play a significant role in future growth of the company.  He thus began working for CARDEAN as a consultant on a part-time basis while he completed his other projects and negotiated the terms of his employment with CARDEAN.

8.  Plaintiff met with the Board several times during this period to present and discuss the marketing strategy that would be needed to implement the new vision for CARDEAN'S future.  See Exhibit B.  The terms of Plaintiff's employment were also being formalized during this time.

9.  After months of negotiation, Plaintiff and CARDEAN agreed to the formal terms of employment on June 1, 2006.  See Exhibit C (the "Contract").  Plaintiff was to be compensated (1) a base salary of $250,000 with the potential to earn a performance-based bonus of 30% and (2) a one-time grant of 10% of the securities set aside for executives which were to vest over four years.

10. To further induce Plaintiff to accept this offer, CARDEAN also included a severance clause: In the event that CARDEAN terminated Plaintiff without cause or Plaintiff resigned for good reason, then Plaintiff would be entitled to (1) severance pay equal to nine months of his salary and (2) a twelve month acceleration of his options vesting.

11. Plaintiff accepted this Contract and began working for CARDEAN as an employee on a full-time basis thereafter.  Plaintiff diligently worked on a marketing plan and reported directly to the President and CEO Cathleen Raffaelli.

12. Within a few months of Plaintiff beginning full-time employment, however, Ms. Raffaeli was discharged.  She was replaced by a new President by the name of Ted Sanders.  Within a short time, Mr. Sanders communicated to Plaintiff that the vision for CARDEAN'S future had changed.  The new vision was to grow CARDEAN through acquisitions and not marketing.

13. Mr. Sanders told Plaintiff that the marketing staff would eventually be cut by 50%, that his budget would be drastically reduced and that Plaintiff would be removed from the executive team

14. Plaintiff told to Mr. Sanders that if marketing was no longer a key component of CARDEAN'S growth plan, his (Plaintiff's) role at the Company would be drastically reduced.

Plaintiff reminded Mr. Sanders of his severance clause and that he had specifically negotiated a provision that a dimunition in his role at CARDEAN would be a "good reason" for his resignation.

15. Plaintiff also reminded Mr. Sanders that he had foregone several other opportunities in reliance of the promise by the Board that he would be a "key visionary" in CARDEAN'S strategic plan for expansion and that he would be unable to continue working at CARDEAN in the diminished capacity since this would severely impact his career and future job opportunities.

16. Mr. Sanders agreed but asked if Plaintiff would accept a reduced severance package as this would make it easier for him (Mr. Sanders) to obtain Board approval. Plaintiff was amenable to this and Mr. Sanders asked Plaintiff to remain at CARDEAN and assist with the transition before resigning from CARDEAN for good reason. Plaintiff agreed to remain at CARDEAN until Michael Lazzaro – the No. 2 marketing person – took over the marketing department.

17. In early December, Mr. Sanders met with the Board and then e-mailed Plaintiff that effective immediately he was being removed from the executive team and that he was to fire Michael Lazzaro whose termination was to be effected by the end of the month. See Exhibit D.

18. Plaintiff reminded Mr. Sanders that this is not what they had agreed to and tendered his resignation. Exhibit E. Plaintiff then submitted a demand that CARDEAN fulfill the contractual obligations under the severance clause. See Exhibit F.

19. CARDEAN declined to fulfill the obligations it had agreed to under the terms of the severance clause and continues to decline to fulfill the promise made to Plaintiff under the Contract.

## AS AND FOR THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

20. In order to induce Plaintiff to enter into an employment agreement, CARDEAN agreed to compensate Plaintiff in the event that Plaintiff resigned for good reason, which good reason included a material dimunition in Plaintiff's role at CARDEAN.

21. Plaintiff's role at CARDEAN was materially diminished and he subsequently tendered his resignation for good reason pursuant to the terms of his employment Contract with CARDEAN.

22. Plaintiff demanded that CARDEAN fulfill its obligations under the severance clause of the Contract but CARDEAN refused to do so and continues to refuse to do so.

23. CARDEAN has breached the Contract and is liable to Plaintiff (1) in the amount of $187,500.00, and (2) for an immediate twelve month vesting of executive stock options.

## AS AND FOR THE SECOND CAUSE OF ACTION PURSUANT TO
## SECTION 1981(1-a) OF THE LABOR LAW

24. Labor Law 198(1-a) provides that in an action upon a wage claim where the employee prevails, the court *shall* allow such employee reasonable attorney's fees and, upon the finding that the employer's failure to pay the wage was willful, an additional amount as liquidated damages equal to 25% of the total amount found to be due.

25. Despite the unequivocal contractual obligation to continue paying Plaintiff a severance in the amount of his monthly salary for a period of nine (9) months after his resignation for good reason, CARDEAN has willfully declined to fulfill its contractual obligation to compensate Plaintiff.

26. Plaintiff is thus entitled to recover the reasonable attorney's fees incurred in the bringing of this action <u>and</u> an amount equal to 25% of the amount that is due and owing to him under the terms of the severance clause of his Contract.

**WHEREFORE**, Plaintiff HARRY TRES MEYER demands judgment against Defendant CARDEAN LEARING GROUP LLC as follows:

1. An amount of $187,500.00 as severance pay;

2. The immediate vesting of twelve months of executive stock options;

3. An amount equal to $46,875.00 (25% of $187,500.00) for Defendant's willful failure to remit Plaintiff's severance pay;

4. An amount equal to the reasonable attorney's fees incurred by Plaintiff in bringing and maintaining this action; and

5. Such other and further relief as the Court may deem just, equitable and proper.

Dated:  Bedford, NY
        April 26, 2007

LAW OFFICE OF NISHANI NAIDOO LLC

By: NISHANI D. NAIDOO, Esq.
Attorneys for Plaintiff
P.O. Box 282
Bedford, New York 10506
(917) 591-9828

## VERIFICATION

STATE OF NEW YORK    )
                                  ss:
COUNTY OF NEW YORK )

      HARRY TRES MEYER, being duly sworn says that I am the Plaintiff in the action herein; I have read the annexed Verified Complaint, and know the contents thereof and the same are true to my knowledge, except those therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

 

                                                   HARRY TRES MEYER

Sworn to before me this 26th .
day of April, 2007

_____
      Notary

                NISHANI D NAIDOO
        NOTARY PUBLIC-STATE OF NEW YORK
              No. 02NA6131981
          Qualified in New York County
       Commission Expires August 22, 2009

## General Write Up for CMO Position

### Client Company

Cardean Learning Group, LLC (formerly Unext, Inc), a privately held company headquartered in Stamford, Connecticut, develops and delivers innovative online education using advances in cognitive science and technology. With over 3,000 students (expecting to grow to 25,000 next year) and an established platform capable of handling astronomical growth, the company offers online courses leading to a fully accredited M.B.A. In 2003, Cardean Learning Group and New York Institute of Technology formed a strategic alliance to launch Ellis College of NYIT, a new online school created to serve working adults. Ellis College's courses take six or fewer weeks to complete and offer undergraduate degree programs in business with majors available in managerial accounting, marketing, management and small business and entrepreneurship. In addition, Cardean Learning has partnered with Carnegie Mellon University, Columbia Business School, the London School of Economics and Political Science, Stanford University and the University of Chicago Graduate School of Business in creating a world-class M.B.A. curriculum. Cardean is accredited by the Accrediting Commission of the Distance Education Training Council (DETC). Additional information may be found on Cardean's website at www.unext.com.

Cardean is supported by one of the world's most influential private equity firms, Guggenheim Partners. Their strong management team and Board of Directors are convinced that Cardean is well positioned to become the global leader in online education. The organization is ready to move to the next level of growth in the e-learning field and has recognized the time is right to recruit a best-in-class Chief Marketing Officer to help it reach these goals.

### Position Summary

The Chief Marketing Officer at Cardean Learning Group will be the company's key commercial visionary responsible for defining, developing and executing the company's global marketing presence. We seek to recruit a creative entrepreneur with a blend of big company experience and small- to mid-sized company entrepreneurial experience gained in rapid growth Internet, e-commerce and technology, consumer or business services. Prior experience successfully launching cutting edge and "break through" ideas and strategies into the market will be key. From a tactical vantage point, this role is accountable for student demand generation supported by Internet and multimedia advertising, promotional, partnership and brand building activities. The Chief Marketing Officer will work closely with the Chief Executive Officer and Board of Directors in positioning Cardean through its next stage of significant growth across the U.S. and internationally. He/She will plan and implement all marketing, branding, DB marketing, affiliate marketing and messaging, as well as online and offline marketing and advertising programs for Cardean. In addition, he/she will coordinate and lead the Marketing Department to ensure that student lead flow supports targeted revenues and will oversee lead generation and call center activities.

## Main Identity

**From:** "Cathi Raffaeli" <CRaffaeli@cardean.com>
**To:** <Tres.meyer@verizon.net>
**Sent:** Sunday, November 06, 2005 2:34 PM
**Attach:** General Write Up for CMO Position.doc
**Subject:** Next Steps

Tres,

It was terrific meeting you and discussing both your background and Cardean Learning Group's needs. I would like to consider you as a candidate in our Chief Marketing Officer search. By way of background, I have included a brief write up on the job that I hope is consistent with my, in-person, description. I clearly understand that you are not available on a full time basis until the end of the year. A further take-away from our conversation was that you might be interested in consulting 2 -3 days per week in advance of securing a more permanent position. I think it is fair to say that we would be very interested in you as a candidate for the CMO search. If you are interested in "tossing your hat in the ring" please let me know by email as soon as possible. Many members of our Board are in NYC this week and I would like to use that opportunity for you to meet them. That would require us signing an NDA and then I would forward to you some critical information to facilitate those discussions.

I look forward to hearing from you and thanks again for your time.

Regards,
Cathi

C. Cathleen Raffaeli
President & CEO



P 203.973.2222 | C 917.751.9271 | F 203.975.2770

Email craffaeli@unext.com
Ellis College www.ellis.nyit.edu | Cardean University www.cardean.edu

Key Relationships
Reports to:                              Chief Executive Officer

Direct reports:                          A series of Vice Presidents, Directors and
                                         individual contributors in Marketing, Acquisition
                                         and Retention, Affiliate Marketing and DB
                                         Marketing.

Major Responsibilities

- Develop an innovative marketing plan to support the short- and long-term success of
  Cardean Learning. The Chief Marketing Officer will lead the effort to put in place a
  comprehensive and winning marketing strategy, including strategic positions,
  product/service offerings, branding and communication strategies, customer service
  and customer care. He/She will lead initiatives to analyze key U.S. and international
  market segments; evaluate needs, attitudes and assess the competitive landscape to
  provide a rich foundation for defining the Cardean Learning brand positioning and
  service delivery strategy.

- Drive the company's marketing communications strategy in a manner that enhances
  brand equity and awareness. A key priority will be to aggressively develop Cardean's
  brand position to achieve and maintain clear leadership and significant mindshare
  relative to competitors in the e-learning arena. This will require creating unique,
  breakthrough value propositions for Cardean customers; strategies that drive
  penetration and market acceptance of services; and proactive online and offline
  communications approaches to stimulate real demand. The Chief Marketing Officer
  will lead all initiatives in brand advertising, corporate identity, promotions, public
  relations, sponsorships, special events, collateral and other means that convey a
  unified and distinctive leadership presence in the marketplace.

- Lead focused customer acquisition and retention programs. Beyond building a brand
  presence, the Chief Marketing Officer will oversee development and implementation
  of targeted and efficient customer acquisition and retention strategies. He/She will
  help to identify partnerships and alliances in both online and offline worlds that
  generate customer visits to the site and company, as well as enhance brand
  positioning. The Chief Marketing Officer will develop benchmark criteria to measure
  the impact of all direct response and loyalty marketing programs.

- Lead the product development/product management effort. The Chief Marketing
  Officer will oversee all activities to define, design and implement website
  requirements to address core customer segment needs. He/She will also codify
  feedback from the market to outline emerging customer needs, website features and
  functional requirements from which the marketing and operational teams can build,
  test and implement new approaches/offerings.

- Develop and execute Cardean's customer care strategy. A key distinguishing feature of Cardean will be its ability to anticipate and respond to customer needs to ensure a superior experience while online and throughout the e-learning journey.

- Develop and execute the Cardean customer service strategy, including oversight for the company's in-house and contracted inbound call center. Additionally, he/she will develop and execute promotion strategies and lead the team-based identification of potential new products (curricula), pricing strategies, college site selection research, selling strategies and techniques and individual training programs.

Position Cardean appropriately to target prospective students through various platforms, including Internet, television, radio, print and direct mail, where appropriate. This will include evaluating and assessing new geographic markets, new products or service offerings or extensions of existing capabilities.

## Main Identity

**From:**   "Cathi Raffaeli" <CRaffaeli@cardean.com>
**To:**      "Tres Meyer" <tres.meyer@verizon.net>
**Sent:**   Wednesday, November 09, 2005 6:52 PM
**Subject:**  RE: followup

Sorry for the delay in responding - Board Committee meetings started today.
The meeting went very well - just as I expected.  I would love to accelerate our conversations.  I am in the city
tomorrow for our Board meeting and if you have time from 5:00 - 6:00, I could get together.  Otherwise we could
talk by phone then, over the weekend or first thing Monday morning.
Thoughts?

Regards,
Cathi


C. Cathleen Raffaeli
President & CEO



P 203.973.2222 | C 917.751.9271 | F 203.975.2770

Email craffaeli@unext.com
Ellis College www.ellis.nyit.edu | Cardean University www.cardean.edu


**From:** Tres Meyer [mailto:tres.meyer@verizon.net]
**Sent:** Wednesday, November 09, 2005 11:56 AM
**To:** Cathi Raffaeli
**Subject:** followup


Cathi,

I believe the meeting with Andy, Ted, and Todd went quite well yesterday.  I have to say, you really "nailed it" as
to how the meeting would play out, even Todd continually pushing his Shikira idea.

Hope your board meeting today and tomorrow goes well.  Let's try to reconnect Friday or next Monday to
determine next steps.

Regards,

Tres

**Main Identity**

| | |
|---|---|
| **From:** | "Cathi Raffaeli" <CRaffaeli@cardean.com> |
| **To:** | <tres.meyer@verizon.net> |
| **Sent:** | Sunday, November 27, 2005 10:37 PM |
| **Subject:** | Offer |

Tres,

I want to apologize again for the confusion on Wednesday; I was looking forward to our lunch and was disappointed that my office mistakenly canceled.

In advance of our meeting on Tuesday, I wanted to firm up our working arrangement for the next 60 days. Consistent with our conversation I would like to offer you a consulting assignment as interim CMO for Cardean Learning Group. In this capacity you would direct all marketing activities of the firm, reporting to me, and all marketing personnel would take direction directly from you. The responsibilities of the job would include all direct marketing activities, market research and data analytics, product development, marketing services and student life.

In the CMO capacity, there are four major initiatives that need your attention and guidance during this period. First, given the time of the year, we are actively planning for 2006 creating both a marketing plan and budget. Due to the time sensitive nature of this exercise we would need you to turn swift attention to this with a preliminary plan presented to the Board on 12/14 (if available, I would like you to attend the meeting) and a final plan due by year end. The second initiative is the on-line direct marketing program with Send-Tec. This is the project that Laura has been managing with Jody and we will want to review and enhance for the beginning of the year. Additionally, based on feedback from the process, we have begun to initiate a web site redesign to improve search optimization and application rates; Laura was going to identify agencies to perform the work and you should be directing this effort. The third is that we are in the process of enhancing our lead management database, adding "scrubbing" mechanisms and redefining data elements so that the lead to marketing to sales to retention process is measured and managed. And, finally, a continuation of the marketing research / data analytics process that we will be discussing on Tuesday.

I think we have agreed that this interim role will be approximately 60 days during which time you will finish your other commitments. Until year end, you will engage with us for three days per week and, for most of the time, will be working out of the Stamford CT offices. We also have an office at 400 Park Ave. that is available for your occasional use. During the next 30 days, we will discuss and prepare a full-time permanent offer with an anticipated start date of no later than February 1st. It is our intention to have a permanent CMO on-board by the end of January. We are excited to begin working with you and believe that you will not only enjoy this assignment but it will enable you to see the ultimate value of a more permanent role with the firm.

Regards,
Cathi

C. Cathleen Raffaeli
President & CEO


CARDEAN
LEARNING GROUP

P 203.973.2222 | C 917.751.9271 | F 203.975.2770

Email craffaeli@unext.com

Ellis College www.ellis.nyit.edu | Cardean University www.cardean.edu

Amended Term Sheet

Employment of Tres Meyer by Cardean Learning Group LLC.

This term sheet sets forth the principal terms for the employment of Tres Meyer ("Executive") by Cardean Learning Group LLC ("Cardean").

1. Cardean shall employ Executive, subject to the terms and conditions hereof, as full-time Chief Marketing Officer. Executive's employment as a regular, full-time employee shall commence as of June 1, 2006. During the Period of Employment, and excluding any periods of vacation and sick leave to which the Executive is entitled, the Executive shall devote all of his business time and attention to the business and affairs of the Company. The company acknowledges that the executive owns another retail business that is managed on a full-time basis by others.

2. Cardean shall pay Executive an annual base salary of $250,000. Such salary shall be payable in regular installments in accordance with Cardean's general payroll practices.

3. For each calendar year of employment, Executive shall be eligible for a bonus targeted at 30% of annual base salary if Cardean meets or outperforms the applicable Board approved operating plan and budget, with the amount of the bonus to be determined in the sole discretion of the Cardean Board. Such bonus shall be paid following the completion of the annual audit of the following year so long as Executive is still employed by Cardean at such time. If applicable, payouts will be subject to pro ration to reflect the actual hire date.

4. Cardean is establishing an executive pool of options. This pool shall constitute 10% of the fully diluted equity of the Company as of March 31, 2005. Cardean shall grant to Executive upon commencement of employment 10% of the options outstanding as of March 31, 2005 from this executive pool. If you are terminated without cause or good reason, and good reason includes a determination by the CEO or the Board that there has been a material lack of performance, by you of your duties, then 12 months of options grant will accelerate and immediately vest. All other terms and conditions will be the same as those applicable to similarly situated employees and are subject to any governing plan document and/or grant agreement.

   4.1 In the event of a Change in Control of the Company all prior grants to the Executive of Options, shall become fully vested (and, if applicable, shall remain exercisable through the end of their respective full original terms).

5. Cardean agrees and acknowledges that Executive will be located at Cardean's offices in Stamford Connecticut. The Executive acknowledges that frequent travel to Chicago will be required.

6. If Executive's employment with Cardean is terminated by Cardean without cause or by Executive with good reason, Cardean shall continue to pay in regular installments in accordance with Cardean's general payroll practices Executive's salary hereunder for a period of 9 months. For purposes of this Agreement, "Good Reason" shall mean any of the following, without the Executive's prior written consent, except the occurrence of Cause:

    6.1 Reduction by the Company of the Executive's Base Salary or the Target Bonus Amount that the Executive may attain if the relevant performance criteria are satisfied and which is not remedied by the Company within ten (10) days after receipt of notice thereof given by the Executive;

    6.2 A material diminution in Executive's duties or responsibilities or the assignment to his of duties or responsibilities materially inconsistent with Executive's position and status as Chief Marketing Officer of Cardean;

    6.3 Executive being required to relocate to a principal place of employment other than to a location in the New York metropolitan area (other than New Jersey). In the event that the Company's office is relocated to the New York metropolitan area (other than New Jersey), Executive shall be required to work out of the New York office. In such event the Company shall not be required to provide Executive with a corporate apartment; or

    6.4 Failure by the Company to obtain a satisfactory agreement from any successor to all or substantially all of the assets or business of the Company to assume and agree to perform the Definitive Agreements within thirty (30) days after a merger, consolidation, sale of substantially all of the assets or similar transaction;

Further, for purposes of this Agreement, cause shall mean :

    6.5 The commission of a felony or any other act or omission involving material dishonesty, disloyalty or fraud with respect to CLG or any of its subsidiaries or any of their employees, directors, members, managers, shareholders, customers or suppliers;

    6.6 Conduct tending to bring CLG or any of its subsidiaries into substantial public disgrace or disrepute;

6.7 Substantial failure to perform duties as reasonably directed by CLG's Chief Executive Officer or Board of Directors after such notice of failure and a reasonable period to cure.

7.   During the Period of Employment and for a period of nine months following the date of termination of Executive's employment by the Company, (the "Noncompete Period"), directly or indirectly, alone or as a partner, joint venture, officer, director, employee, consultant, agent, independent contractor, or security holder, of any company or business, engage in, or finance, or provide financial assistance with respect to, any of the fifteen (15) companies within the secondary online educational services business identified by the Company in the month of January of each calendar year during the Period of Employment, it being understood that the initial list of the fifteen (15) companies is attached hereto as Schedule C; provided, however, that the beneficial ownership of less than five percent (5%) of any class of securities of any entity having a class of equity securities actively traded on a national securities exchange or over-the-counter market shall not be deemed, in and of itself, to violate the prohibitions of this Section;

8.   For the Period of Employment and for a period of one (1) year following the date of termination of Executive's employment by the Company (the "Nonsolicitation Period"), to solicit, aid or induce any employee, student, customer, client, vendor, lender, supplier, sales representative or other business partner of the Company, or any of the Company's subsidiaries, successors, or assigns (collectively, the "Affiliate Companies") to withdraw, curtail or cancel any such person's business and/ or relationship with the Affiliate Companies or their successors.

8.1 During the Nonsolicitation Period, directly or indirectly, hire or employ any person who is employed by the Company or any Affiliate Companies, or in any manner seek to solicit or induce any such person to leave his or her employment.

9.   Executive shall have the right to participate in insurance and other health and welfare programs on the same terms as other employees. Executives annual vacation entitlement shall be four weeks. In addition, a fifth week may be taken with the understanding that this additional week shall be without pay.

10. All salary, bonus and other payments to Executive shall be subject to withholding in accordance with applicable law.

11. Executive shall be subject to the policies regarding confidential information, inventions and patents and similar matters as generally applicable to other employees of Cardean as evidenced in the employee handbook of Cardean from time to time, including as relates to periods when Executive served as a consultant to Cardean. Executive hereby represents and warrants that he is not a party to or

Apr 25 07 09:50a    Christine Beattie    212-749-5114    p.4

bound by any employment, non-compete, confidentiality or similar agreement with any other person or entity that affects her ability to perform services for Cardean as contemplated hereunder and that the execution and delivery hereof and performance of services by Executive does not and shall not conflict with, or result in the breach of or violation of, any other agreement, instrument, order, judgment or decree to which he is a party or by which he is bound.

The sole purpose hereof is to confirm the terms and conditions of Cardean's offer of employment. It is not an employment contract for any fixed period. The employment relationship contemplated hereby is at will; accordingly, either Cardean or Executive may terminate the employment relationship at any time, with or without prior notice.

Agreed and Accepted:

~~May~~ , 2006

June 1 2006

Cardean

By: _____

_____
H. Tres Meyer

## SCHEDULE C

1.  University of Phoenix Online

2.  Walden University

3.  Capella University

4.  Keller Graduate School of Management of DeVry University

5.  American Intercontinental University

6.  Kaplan University

7.  Strayer University

8.  Jones-International University

9.  University of Maryland University College (UMUC) Graduate Programs

10. University of Massachusetts Online

11. Regis University

12. Western Governors University

13. St. Leo University

14. Grand Canyon University

15. Touro University International

Apr 25 07 09:50a    Christine Beattie        212-749-5114            p.6





Cardean Learning Group
225 High Ridge Road
East Building, 1st floor
Stamford, CT 06905

June 21, 2006

Mr. H. Tres Meyer
Chief Marketing Officer
Cardean Learning Group
225 High Ridge Road
Stamford, CT 06905

Dear Tres,

I am please to deliver to you four (4) Option Grants in your name as approved by the Board of Directors. These grants relate to:

1. 18,262 Series A-1 Convertible Preferred Units
2. 4,359 Series B Common Units
3. 272 Series C Preferred Units
4. 1,500 Series F Common Units

In that regard, attached are several documents relative to your option grants.

1. **The Cardean Learning Group 2006 Executive Unit Option Plan**

   This document is the authority under which stock options are granted and the stock option plan is administered by the Board of Directors. It is required that a copy of this document be provided to all plan participants. No action on your part is required relative to this document. Keep this copy for your records.

2. **The Cardean Learning Group Unit Option Agreement Pursuant to the Executive Unit Option Plan**

   This document summarizes the specific terms and conditions relative to your option grant(s) such as the grant date, vesting commencement date, exercise price, number of options, etc. Please execute one (1) copy of each grant document and return it to Nick Lapko, Vice President, Human Resources at your earliest convenience. Keep a copy for your records. Your signature on this document certifies your acceptance of the option grant(s) and conditions related to it as specified in the Executive Unit Option Plan document referenced above.



Cardean Learning Group
225 High Ridge Road
East Building, 1st floor
Stamford, CT 06905

3. **Investment Representation Statement**

This document includes a description of certain legal aspects of the shares being purchased upon exercise of the option(s), and a description of certain legal aspects of the purchase transaction itself. The representation statement is included to help assure compliance with applicable securities laws.

Sincerely,

C. Cathleen Raffaeli
President & CEO

**From:** Ted Sanders
**Sent:** Sun 12/3/2006 10:02 PM
**To:** Tres Meyer
**Cc:** Nick Lapko; John Loomis
**Subject:**

Tres,

I have been reflecting on our Thursday and Saturday conversations and have concluded that my original thinking is correct. The best decision for Cardean is that you continue (and be successful) as chief marketing officer. I simply cannot accept your assertion that your job has substantively changed. It hasn't. We remain the very same company (with the same challenges) you joined months ago. Further, we continue to pursue the marketing strategy you created for the company. All that has changed is the company's executive leadership. Therefore, I am proceeding (as we earlier discussed) with the following:

1. Changing your reporting relationship so that effective immediately, you (as Chief Marketing Officer) report to John Loomis, Executive Vice-President and Chief Operating Officer for Shared Services.

2. Directing that you, working with John Loomis, prepare a specific set of metrics and deliverables for the remainder of this year and the first quarter of next year upon which your performance will be judged. These metrics and deliverables should be consistent with the 2007 plan you've submitted for our consideration (set at twenty-two percent of planned revenues). I would like to see these by the close of business Friday.

3. Directing that you give notice to Michael Lazzaro that Cardean will no longer require his services effective 30 days from tomorrow (December 4, 2006). I suggest that you work with Nick in drafting this notice.

Allow me to elaborate again on the situation that leads to these actions. From the board's (and my) perspective, the poor financial performance of the company can be attributed, in large part, to the failure of marketing to generate an adequate number of high quality leads. Further, the board was promised that we would aggressively move away from our dependence on aggregator leads by the end of this fiscal. In spite of committing significant financial resources, we are far from that goal. Therefore, I want to assure you understand the gravity of the situation. To that end, I am sending you a formal letter tomorrow advising you of these decisions and asking that you and John Loomis create a performance improvement plan based on the metrics and deliverables required in number 2 above.

Tres, I am confident that you are up to the challenge.

Ted

**Main Identity**

| | |
|---|---|
| **From:** | "Tres Meyer" <tres.meyer@verizon.net> |
| **To:** | "Stephen Pollan" <stephen@stephenpollan.com> |
| **Sent:** | Monday, December 04, 2006 1:15 PM |
| **Subject:** | H. Tres Meyer Employment |

Ted,

I am in receipt of your email dated December 4, 2006, where in you rescind the agreement we reached on Saturday, December 2 between us regarding the marketing department reorganization and your willingness to negotiate a severance package.

The termination of Michael Lazzaro along with the change in my reporting relationship has materially affected my ability to perform my duties and responsibilities to the company.

Please be advised that in connection with the Amended Term Sheet dated June 1, 2006, in conjunction with my employment agreement, I have elected to terminate my employment with the company effective close of business December 6, 2006.

The reason for this action is the willful violation by the company of paragraph 6.2 of the agreement referred to above.

Any further discussions should be done with my counsel, Stephen Pollan, 400 Park Avenue, 212-688-6124.

Respectfully,

H. Tres Meyer

4/26/2007

Reorder No. 5105
JULIUS BLUMBERG, INC.
NYC 10013
®10% P.C.W.

**STEPHEN M. POLLAN P.C.**

400 PARK AVENUE, SUITE 1420
NEW YORK, NY 10022
TELEPHONE: (212) 688-8333
FACSIMILE: (212) 688-6151
EMAIL: STEPHEN@STEPHENPOLLAN.COM

January 17, 2007

Amanda S. Thompson, Esq.
Greenberg Traurig
200 Park Avenue
New York, NY 10166

**RE:  H. Tres Meyer/Cardean Learning Group LLC**

Dear Ms. Thompson,

We are in receipt of your letter dated December 11, 2006 regarding Mr. Meyer's resignation from The Cardean Learning Group ("Cardean") and your client's position that Mr. Meyer's resignation was not for "Good Reason" as defined under the terms of Mr. Meyer's employment agreement (the "Agreement").

As you know, Mr. Meyer first began working with Cardean as a consultant in December 2005. At the time, the Cardean management had embarked on a strategy to grow the business through aggressive marketing. Mr. Meyer was hired as a consultant to design a marketing plan that would be the engine of Cardean's growth. Mr. Meyer's proposals were presented to Cardean on January 18, 2006.

At the request of Cardean's then CEO and President Cathi Raffaeli, Mr. Meyer made at least six presentations to the Board of Directors of Cardean (the "Board") explaining this new strategic vision for Cardean. When the Board requested another presentation, Ms. Rafaelli declined to allow yet another presentation repeating what had already been presented six times, and informed the Board that she approved of this new strategic vision and the marketing plan that Mr. Meyer had devised.

Mr. Meyer was hired shortly thereafter as the Chief Marketing Officer to implement a marketing plan which was to be the engine of Cardean's growth. It was emphasized to Mr. Meyer that the primary reason he was being hired was to grow Cardean aggressively through marketing so that the company could be taken public within two years. A key component of Mr. Meyer's compensation package was thus a stock option plan, which vested over a four year period.

As you also know, Mr. Meyer had barely worked a few months in his role as Chief Marketing Officer when Ms. Rafaelli was discharged and Ted Sanders was hired to replace her. Within a short time, Mr. Sanders conveyed to Mr. Meyer that the strategic plan for growing

Cardean had changed. The focus would be on acquisitions, and marketing was no longer a key component of Cardean's strategic plan. Mr. Sanders told Mr. Meyer that he planned to grow by acquiring non-profit schools, and by emphasizing the non-profit nature of Cardean in its eventual public offering.

The marketing staff was immediately cut by 50% and would, according to Mr. Sanders, be almost eliminated. Since marketing was no longer a key component of Cardean's strategy, the Chief Marketing Officer was removed from the executive team and asked to report to a consultant – John Loomis. Mr. Loomis not only had no marketing experience, he was not even an employee of Cardean! Mr. Meyer told Mr. Sanders that this was a material diminution in his role and responsibilities and he would be exercising the termination clause and concomitant severance pay clause in the Agreement. At the time, Mr. Sanders verbally agreed to this and asked him (Mr. Meyer) to assist in the transition.

Mr. Meyer and Mr. Sanders were in agreement with Mr. Meyer's exercising of his termination provision of the Agreement until, it seemed, Mr. Sanders met with the Board in early December. It was only then that Mr. Sanders e-mailed Mr. Meyer that he now did not believe that there was a significant diminution in Mr. Meyer's role even though (1) marketing was no longer a key component of Cardean's growth plans; (2) Mr. Meyer had been removed from the executive team; (3) the marketing division would be almost completely eliminated; and (4) Cardean was now focusing on acquiring non-profit schools to go public as a non-profit institution.

In sum, Mr. Meyer strenuously disagrees with Cardean's assessment that his resignation was without Good Reason. This disagreement is based not just on the conversations that Mr. Meyer had with Mr. Sanders prior to his (Mr. Sanders) meeting with the Board, but also on the facts: the change in vision regarding the growth strategy for Cardean, the reduced responsibilities Mr. Meyer would have after his staff was eliminated, his removal from the executive team, and the requirement that he report to a person with limited marketing experience.

This letter is thus a demand pursuant to Section 6.2 of the Agreement that Mr. Meyer continue to be paid his regular pay in installments in accordance with Cardean's general payroll practices and for immediate vesting of 12 months of options grants pursuant to Section 4 of the Agreement.

Sincerely,

Stephen M. Pollan, Esq.

STEPHEN M. POLLAN P.C.
400 PARK AVENUE, SUITE 1420
NEW YORK, NY 10022
TELEPHONE: (212) 688-8333
FACSIMILE: (212) 688-6151
EMAIL: STEPHEN@STEPHENPOLLAN.COM

February 15, 2007

Amanda S. Thompson, Esq.
Greenberg Traurig
200 Park Avenue
New York, NY 10166

RE: Tres Meyer / Cardean Learning Group, LLC

Dear Amanda,

When last we spoke, you expressed interest in learning the specifics of the diminution of functions and responsibilities as alleged by Tres Meyer; from the time he was first employed by Cardean Learning, LLC, until his election to terminate his position pursuant to paragraph 6 of the Employment Agreement.

For your information, a summary of the Position was memorialized and presented to Mr. Meyer prior to his accepting the title of Chief Marketing Officer. The description can be found in the attached "General Write Up for CMO Position," which Mr. Meyer received from the company. Mr. Meyer enjoyed an inordinate demand for his marketing acumen by several major companies at the time, and chose your client because of the challenges and performance required by the description, incidentally at significant financial sacrifice. Prior to his employment, he made it a point to meet with members of the company's Board on four occasions, for the purpose of confirming the company's needs as expressed in the job description.

Originally, the Chief Marketing Officer was to report to the Chief Executive Officer and interact closely with the Board of Directors. After the termination of Cathi Raffaeli and the appointment of Mr. Ted Sanders, the marketing group's reporting was shifted to the acting head of technology, a person with no marketing or sales background that we have been able to discover.

Further, there were multiple instances of the dilution of the marketing function, including:

1) A 60% reduction of marketing staff, as well as the elimination of all offline marketing initiatives.

2) A budget reduction aggregating 50%, rendering obsolete the existing marketing program

3) In addition, a total metamorphosis of the company's philosophy, from one which was to become a candidate for a public offering into a non-profit institution (see the January 2007 release concerning affiliation with Ellis College, attached). The marketing function became relegated purely to "lead" acquisition.

4) The new philosophy recreated the marketing function into a supporting role from a strategy role, which my client would have declined if originally offered.

5) Finally, Mr. Meyer's exclusion from the executive team, immunized him from knowledge of the company's plans, strategies, product development, etc. This was totally antithetical to creating the global presence he was charged with in the attached position description.

Would you please speak to your principals to ascertain whether this matter can be disposed of without litigation?

Sincerely,

Stephen Pollan

*Index No.* 7601406        *Year*    2007

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

HARRY TRES MEYER

*Plaintiff*

-against-

CARDEAN LEARNING GROUP LLC

*Defendants.*

---

SUMMONS & VERIFIED COMPLAINT

---

### Law Office of Nishani Naidoo LLC
*Attorney for Plaintiff*
P.O. Box 282, Bedford, NY 10506
Ph: (917) 591-9828    Fax: (917) 591-9828
*www.nnaidoo.com*

---

*Pursuant to 22NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies, upon information and belief and reasonable inquiry, that the contentions contained in the annexed document are not frivolous.*

*Dated:*  April 26, 2007            Signature: ..............................................

Print Signer's Name:  Nishani D. Naidoo, Esq.

---

*Service of a copy of the within*                                                *is hereby admitted.*

*Dated:*                    ...................................................................

*Attorney(s) for*

---

*PLEASE TAKE NOTICE*

❑            *that the within is a (certified) true copy of a*
NOTICE OF ENTRY    *entered in the office of the clerk of the within named Court on*

❑            *that an Order of which the within is a true copy will be presented for settled to the*
NOTICE OF    *Hon.*                    *, one of the judges of the within named Court*
SETTLEMENT    *on*                    *, at*        *A.M.*

*Dated:*

### Law Office of Nishani Naidoo LLC

*Attorney for*            *Plaintiff*
P.O. Box 282
Bedford, NY 10506
Ph: (917) 591-9828
Fax: (917) 591-9828
*www.nnaidoo.com*